This case arises out of the Federal Tort Claims Act, which embodies Congress's broad waiver of sovereign immunity and its consent to suit for the tortious conduct of government employees. The conduct complained of here is a participation in a terrorist attack by an FBI agent, which rises to the level of assault under the Texas criminal and civil law. The issue presented is whether this conduct is shielded from liability by Section 2680A of the Federal Tort Claims Act, which is an exception from waiver. The immunity preserved by Section 2680A is intended to prevent judicial second-guessing through the medium of an action in tort of the executive policy judgments. So here the executive decides to infiltrate a terrorist cell, and secrecy is essential to that? And you're not arguing that undercover operations, whenever they go bad, don't implicate discretionary choices? Absolutely not. So what's the best case that says there is FTCA liability when an undercover agent trying to stay secret, trying to identify terrorists, unwittingly exacerbates their efforts? There is no case about particularly those facts, Your Honor. But the case in Berkovitz is similar to this, in that there is a government actor who is issuing polio vaccines and has broad discretion to do a number of things. But there is one rule they're not allowed to do. They're not allowed to issue the vaccine without reviewing the patent application. And they fail to show that they did that, and the court remands it. And that's a similar situation here. There is broad authority for an undercover agent. Secrecy is essential. But there are a few rules that govern undercover FBI operations. They are found in the Attorney General Guidelines and the DIOG, which is the FBI's Undercover Operations Guide. And those rules give them broad discretion, but they do require that they do not participate in an act of violence. Even with the directors of the FBI's authority, they are not permitted to engage in an act of violence. Under the first prong of U.S. v. Galbert, which this Court and the U.S. Supreme Court have consistently held, is how you decide whether conduct is protected under the discretionary function. There are two prongs, one of which is, is this agent under applicable law and rules permitted to engage in this conduct? The second prong is, is the decision by this agent to engage in this conduct the type of judgment that Congress intended to protect? And so, under the first prong of Galbert, getting to the question of what rules apply to him, under the DIOG, the Court, instead of applying what is the bright line on this conduct as in Berkowitz, what's the bright line and did they cross it? The Court, the trial court here, said that the standard was, was there elements of discretion? There were. So I'm clear. You say the directive, the Berkowitz directive is, don't participate in violence against innocent Americans. Oh, no, no, no, Berkowitz is not about these facts. No, I know, but the circuits like Sutton or Souter that are interpreting it and applying it, that the one thing that an undercover agent can't do is actively participate in violence. That is according to the FBI's guideline, its own guidelines. Right. But, but aren't you in your brief trying to extend that to be there's an affirmative duty to avert violence against Americans as opposed to participating in it? Not exactly, Your Honor. There is a, another guideline in the DIOG that says if you are investigating and you find that one of your subjects is, plans to commit an act of violence, that you must discourage the violence. And the trial court says, well, there's a lot of ways you could discourage the violence. How and when? Which is exactly right. There, there is a broad discretion and there are many ways they could have discouraged the violence. But the one thing they can't do is not discourage the violence in any way. And I don't, I don't see circuit law embracing that. I see the circuit law saying it's a pretty extreme bright line and it may have been crossed here. I'm not saying that you lose, but a discouraging violence, instead it would seem to me you've got to, you've got to harmonize one of the acts you've identified, that he says go tear up Texas, um, and then he accompanies and arguably does reconnaissance before your client is shot. Yes, Your Honor. Um, and, and are you saying that's the intentional tort? That's the participation in violence? Or are you saying he should have discouraged this cell that, no, no, no. We're saying that that is the participation in violence. What we are, we're just, that's our, that's our strongest argument. Um, I'm bringing up the point about discouraging violence to say that we have no evidence. The government has permitted no discovery in what he has done. All they have to do is show one way that he discouraged the violence to escape, for example. Well, they say they issued at least two bulletins to law enforcement. It may not have gotten down to Mr. Joyner. I'm not, I'm very sympathetic to his situation, but he's employed by the school, right? He doesn't carry a gun? He doesn't carry a gun. He's unarmed. Okay. But, but bulletins were issued. To the police and, and Director Comey himself acknowledged that they, they didn't receive the second one and they weren't specific, but the UC one didn't, didn't do anything to discourage the violence. But our stronger point is the participation in violence. Your Honor, this was a participation in a violent act and the standard is, did you participate in a violent act? If so, you fail the first prong of Galbert because that's the rule. You're citing, you're relying on the FBI, uh, DIOG, right? Yeah. That guy. What about the national security guidance? Is that the one that applies? We don't have any, uh, we have never seen the national security guidelines. All we have is an affidavit from the government that says it exists and they say it, uh, wouldn't you acknowledge this is a different situation from your typical undercover that this is terrorism we're talking about? Yes, Your Honor. So it's not surprising that the FBI would have very different criteria for a terrorist investigation. Well, um, the, the DIOG has very broad rules and a terrorist and it says by its, the DIOG says that all con, all undercover domestic operations are covered by this. So I don't think it's a burdensome rule to say you shall not participate in violence, which is one of the only rules that applies to otherwise illegal acts. Um, is there any mechanism for Joyner to have received compensation for his injury at all? Oh, yes. We asked, uh, we asked the court for it for part of the administrative procedure for the federal thought claims act is for us to ask the FBI before we come to this court and they, uh, would not provide any mechanism for making him whole. Um, moving to the second prong of Galbert, Your Honor, the district court also, uh, talk up just a little bit. Yes. Uh, the district court also, um, applied a prong that's inconsistent with a test laid out by the Supreme Court. They only required for the showing that the judgments at issue in this case be based on public policy, but, uh, the Supreme Court and, and this court have found that, um, you want to check to see whether that policy is the type of policy that Congress intended to protect. Uh, we have good precedent in this case, um, in this for similar set of facts here, Your Honor, in this circuit, the Sutton, um, were, and we're both dealing with intentional torts of, uh, of, um, law enforcement agents and this court, um, analyzed the congressional intent in those cases by looking at, um, the 2680 H, which is something that was added after, after the federal tort claims act was originally passed in response to the Bivens actions. Uh, the assaults that took place there that were not, um, that you could not make those victims whole. The, uh, the court said this, this sees that as very strong, um, evidence of, of Congress's intent in this case. And in Sutton, they said if, if you do have a constitutional tort or if you commit one of the intentional torts in 2680 H, you, uh, you're out, you failed the second prong of Galbert. Now Camp, and that was under a, a malicious prosecution with bad facts where the, the, um, the, the agent really was trying to do an injustice to an innocent person. Now in Campos, it's different, um, but it wasn't clear that there was any bad faith at all. He was just doing his job and it turned out to be a false arrest, false imprisonment case. And he did commit that intentional tort, but the court, um, was uncomfortable just applying the naked principle of intentional tort and they required something a little more, something like bad faith. They said something Bivens-esque, something, um, like egregious misconduct. We don't know how the circuit will treat an assault, whether an assault is more of a Sutton, um, the Sutton flavor where they've done something wrong just in committing the intentional tort or whether this is more of the, the, uh, Campos flavor where we need something additional. We need some bad faith. We need some, some, something Bivens-esque. I would, um, point out that assault is the very, uh, tort that the Bivens agents were, uh, being accused of and so maybe it should weigh more towards Sutton, but, um, if this court decides that Campos is a better standard where there needs to be something additional, something bad faith, I would point to the, the evidence in the record, which is very patchy. We don't have very much. We have not been permitted to discovery, but the UCE1, the undercover agent arrived and was providing reconnaissance for terrorists and was taking pictures of two known victims less than a minute before he knew they were about to be attacked by two men with machine guns and body armor and, and he took, instead of doing anything, the FBI agent got out of his car and just started taking pictures, um, possibly video and, um, and, uh, let the attack proceed. Sufi and Simpson are the, Sufi and Simpson are the two terrorists, Your Honor, yes. And, and Officer Stevens killed both of them even though they have machine guns and body armor? The evidence is that, yes, only Officer Stevens was armed. He pulled out his, uh, pistol, his only weapon, and killed both of them. That is the evidence that we have right now. We haven't been permitted more discovery, um, that is all we know. It's a miracle they're alive. That, that conduct of getting out and filming the attack rather than stopping it, uh, rises to the level of bad faith, it rises to misconduct, but it also is deliberate indifference. When a, uh, we, um, it is, which is the prong that this court has had trouble finding in the different state-created danger cases that had come before it. The second prong of Galbert, both Sutton and Campos find that a constitutional court, um, trips that, uh, trips that prong. We, you cite Doe, that was an en banc decision. I don't remember that we acknowledged that state-created danger applies. No, the facts, the court said the facts in this case do not support state-created danger because we do not have deliberate indifference. It then laid out the elements it would look at to find state-created danger. Now, it didn't find it, but the element that it, that it found was not met in that case was deliberate indifference. Known victim, immediate danger. And in other cases, um, that have wrestled the same point in this circuit, such as a state of CA, um, or Doe versus U.S., they found the same problem. We don't have a known victim. It's not a small enough set of people that we knew were in immediate danger or we didn't know the danger was immediate. And, uh... In any event, that's a doctrine, pardon my ignorance if I'm wrong about this, it's a doctrine of liability. We're talking about an immunity defense here. Yes, Your Honor. I'm not even sure how those two interact. Well, Your Honor, we lean on Sutton and Campos here, which both said that the second prong of Galbraith can be defeated if we find conduct that rises to a constitutional tort. So the, um... You're running out of time. Do you want to focus on your terrorism claim? No, we will rest on our briefs on that claim, Your Honor. Um, the, um... And I will reserve the balance of my time, Your Honor, for rebuttal. You want to touch on denial of discovery? Your Honor, the, uh... Yes, Your Honor, the standard for a trial court denying discovery is an abuse of discretion, which would be a very high standard. And if the 12b-1 motion was not decided in an error of law, we would say there was no abuse of discretion. But we think that here, because there was a failure to apply the Galbraith standard as articulated by the Supreme Court, discovery should have been permitted. We are... We just need more discovery. There needs to be more factual development for a proper disposal of this case. We're asking this court to reverse the 12b-1 dismissal and find the plaintiff has demonstrated adequate facts to survive a 12b-1 motion, or alternatively, we ask the court to reverse the 12b-1 dismissal and instruct the trial court to reexamine the facts using the Dolan standard of presumption and the correct Galbraith prongs, which would include the Sutton-Campos standard of intentional tort, constitutional tort. And just to touch on the Dolan standard, the trial court said we're going to apply a presumption of... a presumption that all sovereign immunity waivers must be construed in favor of the sovereign, which is generally a correct rule. But this Supreme Court has found... the Supreme Court has found repeatedly that while that is the correct rule, that is not a rule that should apply to 2680 exceptions in the Federal Tort Claims Act. For example, in Dolan, the Supreme Court characterized the rule as unhelpful in this context, and trial courts that apply it run the risk of defeating the central purpose of the statute. I have about 30 seconds left. I would like to reserve it for rebuttal. Thank you. Mr. Salton. Thank you, Your Honor. May it please the court, Joshua Salzman on behalf of the United States. I want to begin by just emphasizing a couple of key points. First, as this court has repeatedly recognized, the discretionary function exception protects the investigative judgments of law enforcement officials. Second, the discretionary function exception applies except when there is a very specific directive in place that withdraws discretion. This court recognized that in cases like Spots and in cases like Salmon. Third, if there were ever a circumstance where discretionary law enforcement investigative judgments were entitled to deference, it would be this one, because it involves the judgments made by an undercover FBI agent in the context of a national security investigation seeking to penetrate a terrorist cell. The plaintiff here wants to engage in exactly the kind of second-guessing that the discretionary function exception forbids. He wants to parse the specific language used in a text message and say that when the FBI agent used the phrase, tear up Texas, he crossed over from investigator to investigator. The plaintiff here is a school employee who wasn't armed, who's being filmed by an undercover agent as two terrorists get out of a car with machine guns. So is your argument that that undercover agent didn't anticipate the immediate violence, or is your argument that the agent thought the bulletins warning local police would have gotten to them, or is the argument that an undercover national security investigation means absolute immunity even as to participation in violence? A couple of things, Your Honor. First of all, we are here on a motion to dismiss, so the facts I'm going to describe here are mostly those asserted in the complaint. This case shouldn't move past that stage, but if it did, there are several aspects of what I'm going to say that potentially we might take issue. What the complaint alleges is that the FBI agent was present in Garland and took a picture of the security checkpoint shortly before the shooting commenced. Our argument is that there is no specific directive that applied, and we submitted the sworn affidavit of the acting assistant director for the counterterrorism division at FBI. That's Matthew DeSarno. The relevant excerpts appear at pages 155 to 157 of the record. That's an affidavit describing an item that you say is standalone that no one has ever been able to see. That sounds close to absolute immunity. We're not saying absolute immunity, but what we are saying is that affidavit establishes the only thing we need for purposes of this case, which is that there is no specific policy or provision in that policy guide, in the National Security Undercover Policy Guide, that dictates how agents are supposed to interact with potential terrorists or the subjects of the investigation. And for good reason. But do you see the catch-22? If there are directives limiting them at all, you're at the same time saying courts and plaintiffs, we can't tell you what they are. Two things on that, Your Honor. First of all, given that we have this affidavit, and that affidavit accords with common sense, just as a matter of common sense, as this declaration lays out, if you had restrictions that said an FBI agent can't use particular language, for example, in a communication with a potential terrorist, that would impede the ability of FBI agents to win the trust of potential terrorists and to fulfill their important national security mission. Would it be different if the undercover agent traveled in the car, and as they stepped out he said, here's your machine gun? I do think that that would be a closer case, and that would be something we'd need to confront if that happened. But therefore, what's critical for me, as we write the decision or as we discuss it, is what's the limiting principle? I need to hear the government, at least this is my view, tell me that at least the limiting principle is undercover agents, even in national security, cannot participate in violence. Are you prepared to say that? I'm not. I think where my hesitation comes is from the word participate, because I'm not sure anything that's been alleged here rises to the clear level of participation. Bear in mind— But that's a factual argument. Well, I— Because you'd be embracing the principle, let me make it even more difficult. Let's say to infiltrate and gain trust, the undercover agent decided to shoot the American himself. That's participating in violence. That would clearly be participating in violence. And that, therefore, clearly would not be within the discretionary function exemption? I think discretionary function exemption cases can be difficult in that they lend themselves to exactly these sorts of hypotheticals. But I read all the circuit opinions on this, on undercover investigations, and I frankly—you probably know these cases, the Fast and Furious gun scandal or John Connolly going to jail for 10 years for infiltrating and helping the riflemen in the mafia. Those, to me, implicate national security just as much. American citizens were killed because of undercover behavior. And circuit courts, at least in dicta, say that's because the undercover agent participated in violence. Why would we not expect undercover in this context to have that same extreme limitation? Well, what I would say is, first of all, we are dealing with a separate set of policy guidelines. Because it's a national security as opposed to a law enforcement investigation, you do have this separate set of policies in place. But I want to emphasize— But the Fast and Furious scandal, that was against Mexican cartels, across-border national security. Even if Your Honor wants to reserve that, and I think you should, on the facts here, all you need to resolve this case is to say, even if you wanted to assume that there was a provision that said you cannot commit an act of violence, that if the FBI agent actually pulled the trigger, that that would exceed some sort of limitation. That's not—nothing you need to write to resolve this case needs to address that circumstance. Well, that's important, though. That does still leave some room for accountability. National security can't just mean federal courts, you can't look at this at all. That's fair enough, Your Honor. But for purposes of this case, I do think it's important to look at the specific facts that are alleged. The allegations are one text message was sent ten days in advance that said tear up Texas, that the undercover traveled with Mr. Simpson and Sufi in a separate car to Garland, was physically present, and took a photograph. And whatever you think is over the line, I think to the extent that this court has repeatedly recognized that you need to give a wide berth to investigative judgments and you need to particularly in contexts where national security is at stake, particularly in contexts where you want agents using their best judgment and not operating in fear of potential tort. What is the taking of a photograph other than a red earring? That's not participating in violence. I agree, Your Honor. I don't see the photograph as doing much work for them at all. And physical presence, I don't think, gets them there either. And what do you have then? You have the supposed instigation of sending a text message ten days in advance that said tear up Texas to somebody who was already in contact with a high-ranking ISIS official in Bosnia and had clearly— So I think, as Judge Higginson laid out, what we're looking for is a limiting principle. And let me just start at the outset by saying I certainly understand the general theory that you don't want to chill these very sensitive national security operations. Let me attack this sort of from a different direction. Why would it chill the operation to simply pay damages? The officers can do what they want. This is really just another way of getting a compensation system for people who are injured. After 9-11, there was a compensation fund created. Congress enacted a special statute there. And why can't we treat the FTCA as essentially a 9-11 fund for these broader situations? Because what I think this court's case—I'd refer you, for example, to the Buchanan case, which involved a prison riot, which is a published decision of this court. What this court has recognized is when you have people in the heat of the moment trying to make their best judgments about how to proceed, you don't want them operating in the shadow of tort law. You don't want their judgments to be potentially infected by fear of tort liability. And what this court said in Buchanan is, we don't think Congress would have intended to expose the United States. But this is not Joyner v. FBI agent. This is Joyner v. the United States government. But that's true. So the officers are not going to be personally liable in any way. That's true in every FTCA. We're not talking about qualified immunity here, right? We're talking about FTCA. Absolutely, Your Honor. But that's going to be true in every FTCA case. And yet this court has repeatedly said that these are not the kinds of— in cases involving things like prison riots in Buchanan, in things like national weather disaster emergencies, in cases like Spots and in Freeman, this court has repeatedly found circumstances where there have been plaintiffs who have been very sympathetic, who you might say we want a compensation system for, like in Freeman. That was Hurricane Katrina victims, as I recall. You may have folks who you really think there might be policy arguments in favor of having a compensation system in place. But what this court has recognized is the FTCA is not that generalized compensation system just because there are folks who have been injured in the course of government operations. So Mr. Joyner needs to go to Congress. That's what you're saying. Potentially. That might be a fair answer. I'm just asking. That's basically your position. I think so, Your Honor. But I think this court's FTCA cases, which dictate both at the first step of the Galbert analysis that you need a very specific directive on point, and at the second step that recognizes things like national security and investigative judgments are in the heartland of the kinds of discretionary judgments that Congress intended to shield through the discretionary function exception. That's why the FTCA claim fails. If Your Honors would like, I'm happy to sort of address the state-created danger theory, which this court has never before adopted. And in any case, as Judge Ho quite rightly pointed out, they're asking you to actually go much farther than any circuit has ever gone before because they're not just asking you to recognize that cause of action. They're asking you to say that it provided such a clear directive that it overcomes the discretionary function exception, which is not something even their cases say. And this court has twice, in the related context of qualified immunity, in the Kovacek case and in the Chavis case, said that the state-created danger theory, at a bare minimum, doesn't provide such specific directive that it would overcome qualified immunity. And by analogy, I think, it would not provide enough specific directive to satisfy the discretionary function test. State-created danger theory does seem more attenuated. What about speaking a little bit to the law enforcement proviso? Of course, Your Honor. So the first point I want to make is that argument is flatly waived. They didn't make it at all in district court. So I don't think Your Honors need to wrestle with it. That being said, if the court were... But if we're very concerned to come up with limiting principles... Of course, Your Honor. So the key precedent on point is the Campos decision from a couple of years ago. And the one crucial point that Campos makes is it rejects the proposition that merely because a constitutional violation has been alleged, that that is by itself enough to overcome the discretionary function exception. That not everything... Two provisions work in tandem. Exactly. And what Campos says is under certain egregious circumstances, the law enforcement proviso may trump. But the facts here, again, this is not the FBI agent pulling the trigger. This is the FBI agent being present in a car and taking a photograph. Um... There was a question earlier about discovery, so I want to be sure I speak to that issue as well. The two key precedents from this court are the Freeman case that I mentioned earlier and the Davila case. And what both of those cases recognize is that the discretionary function is not just an immunity from liability. It's an immunity from suit. And as a result, you don't just have this presumption in favor of discovery. The plaintiff bears the burden of coming forward with reasonable grounds for thinking that if the discovery would unearth a policy that could overcome the discretionary function exception. And I think the district court quite reasonably concluded here that there's no... that plaintiffs had not satisfied that requirement. Uh... Given that there... It is in the record that there were two bulletins that were sent out? I believe it is. I think that's in the complaint, as I recall. Um... But nothing about whether or not this undercovers actions going to Texas and filming were approved? There's nothing about that, Your Honor. There is some stuff about the bulletins, but not approvals, because we're working primarily... With the limited exception of that DiSarno declaration I referenced earlier, we're working on the facts in the complaint. Given that they rested on their briefs for the Anti-Terrorism Act claim, I think we'll do the same. If the court has no further questions, we'd ask you to affirm. Thank you, Counsel. Thank you. McButtle. Your Honors, the cases that my colleague has raised, Spots and Buchanan, are both cases where this court looked for and could not find any kind of rule or policy that drew a bright line on their conduct. And so the argument of those plaintiffs was, this is, hey, they just used bad discretion in the way they performed their duties, which they were allowed to do. That's different here. We have a bright-line rule with the DIOG. As to the waiver argument, the court in Campos has made clear that the law enforcement proviso is not an independent argument. It's part of the second prong of Galbert. And even Sutton, which is pre-Galbert, said this has to be read together with the discretionary exception. It's not an independent argument. Congress added the law enforcement proviso in response to the events in the Bivens case, and Sutton took that as a very strong indication of Congress's intent. And to the extent the government proposes that we cannot cite Fifth Circuit precedent that was before the judge, for example, Sutton, because we did not independently raise the law enforcement proviso, which Campos told us not to do, then we would point to this U.S. Supreme Court precedent that neither party can waive subject matter jurisdiction in Henderson v. Shanickey and other cases that we cite in our briefs. So if your main line is the policy guidance about not participating in violence, what is your strongest act that you believe is participating? Not encouraging violence by another, but personally participating. Yes, yes, by participating in violence. We would say this. We do not have evidence, because we've been prevented from discovery of communication between the terrorists and U.C.E. 1 immediately before the attack. But we believe that it must have happened, because... So your view is a communication of encouragement would be participation? Communication and physically being there, providing reconnaissance for them, taking videos or photos, whatever he was doing. So you wouldn't have to personally, I guess directly is one way to think of it, you wouldn't have to directly be involved in the violence, facilitating, handing the gun, as Judge Higginson... I think that... That would be enough? I think that the court... I think that whatever the rules the FBI lays out is the rule, and the FBI doesn't prohibit shooting an innocent person or hitting them. It prohibits participation in the event, which would be... Mostly in dicta, where do you see a circuit court having applied that? I mean, they are all saying, this undercovers discretionary. And then they say, but it wouldn't be. Have you ever seen actually a court not apply the discretionary function to an undercover agent, domestic undercover, because of participating in violence? No, Your Honor. So it always seems to be, well, that's the catch-all. Which is an important one. But that's why I think it's important, these questions to you about what step was not merely failure to discourage, but actual participation. It's not the text. It couldn't be the gun given to him five years earlier, right? Wasn't it five years? So it's got to be that, what was happening immediately down there in Garland. Yes, Your Honor. Although we don't know where they got their other guns from. We haven't been permitted in discovery, but yes. The participation is the, he was there with them. He traveled with them. They traveled from Arizona. He traveled from, we don't know where he lives. And they arrived there within 30 seconds. And he was getting questions from his handler, his ISIS handler. How many law enforcement is there? Direct them to the weaker back entrance. Are there snipers? Is the FBI present? We don't have evidence about how he responded to those. The problem you have is, this sounds like the prototypical act of discretion. And what you're throwing at us is a policy guidance that is itself far from precise. I mean, we're not even able to conclude precisely what participation here even means. Yes, it's a finding of fact that the trial court should have engaged in. What does participation mean for them? I don't think it's a factual issue. I think it's a legal question if we're going to say, this participation language is that mandate as opposed to discretion. And we don't even know how clear this mandate is. We're not clear whether it allows encouragement. We're not clear if it allows passive participation. We're not giving the government very good instruction here, if we find for you. Surely there's some, yes, Your Honor. Surely there's some level where participation, it becomes, moves out of the realm of vagueness and moves into, we really have done this. I get the FBI agent pulling out a gun and shooting. That's clearly participating. You don't have that here. You've got several steps removed. But we do have him arriving right before them and taking pictures and providing reconnaissance. At what point do we reach the, but participation is the bright line. I want to point out one thing. It's very hard. Just because the light's on. I'm sorry. That's all right. Go ahead and make your final point. The court in Sutton said this in struggling with this question. The threshold question of government immunity is not always answerable on general pleadings. Trial courts ought not to deal with this on motions under 12B1 when the proper disposition of the case requires some factual development by the parties. Thank you, counsel. Thank you. Case is submitted. That concludes our session.